**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

IRENE ROUNDTREE,

                Plaintiff,

v.                                                                                          Case No.: 3:23-cv-358-WWB-JBT

WERNER ENTERPRISES, INC., and
MARLIN FOSTER

                Defendants.
_____

**DEFENDANTS' OMNIBUS MOTION TO STRIKE
OR LIMIT TESTIMONY OF PLAINTIFF'S TREATING
PHYSICIANS WITH INCORPORATED MEMORANDUM OF LAW**

Defendants, Werner Enterprises, Inc. and Marlin Foster ("Defendants"), pursuant to Federal Rules of Evidence 702, and 703, and based upon the reasoning set forth in *Daubert v. Merrell Dow Pharms. Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed 2d 469 (1993), respectfully move this Court for the entry of an order striking or limiting the testimony of Plaintiff's non-retained testifying experts/treating physicians, Dr. Deric D'Agostino; Dr. Jay S. Park; Zachary Dexter; Dr. Beverly Eadie; Dr. Hector Pagan; and Dr. Andrew F. Cannestra (together, "Plaintiff's Treaters"),[1] because they cannot provide a reliable methodology to opine regarding medical causation of injury[2] in this case. In support, Defendants state as follows:

---

[1] Attached as Exhibit A is Plaintiff's Rule 26(a)(2) Expert Witness Disclosures.
[2] In addition, without the ability to present medical causation opinions, there can be no evidence of permanent injury, which precludes any presentation or award of non-economic damages. Fla. Stat. § 627.737.

**BACKGROUND**

This is a personal injury matter stemming from a motor vehicle accident that occurred on October 28, 2022, in Jacksonville, Duval County, Florida. Plaintiff Irene Roundtree ("Plaintiff") alleges a variety of injuries that she claims were caused by Defendants' negligent operation of a tractor trailer that collided with her vehicle. D.E. 13. Plaintiff primarily claims injury to her neck, back, and shoulder. *See* Plaintiff's Interrogatory Answers, attached as Exhibit B. Amongst other things, Defendants dispute that this collision caused any of the complained of injuries. D.E. 16, 19. Plaintiff's Treaters treated Plaintiff in the months following the incident. It appears that Plaintiff intends for each of Plaintiff's Treaters to testify that the subject collision was the medical cause for Plaintiff's injuries. *See* Exhibit A. However, while each treater may be qualified to testify regarding his treatment and consultation with Plaintiff and a related diagnosis, not one is qualified to provide opinions on the cause of the Plaintiff's purported conditions, as such would improperly transform testimony of a treating physician (i.e. a fact witness) into that of an expert witness. And, of course, such expert testimony would be subject to, but cannot meet, the standards of Rule 702 and the Supreme Court's directives in *Daubert*. *See Muniz v. United States*, No. 2:13-cv-01663-KOB, 2015 U.S. Dist. LEXIS 100921, at *1 (N.D. Ala. Aug. 3, 2015); *Collett v. Fisher*, No. 3:19-cv-1468-HES-MCR, 2022 U.S. Dist. LEXIS 43202 (M.D. Fla. Jan. 19, 2022). In other words, Plaintiff's Treaters' expert opinion testimony that the collision caused the injuries to Plaintiff is subject to, but cannot pass, *Daubert* scrutiny.

Plaintiff contends that each of her disclosed treaters are non-retained experts that performed various levels of consultation and/or treatment of Plaintiff. *See, e.g.,* Ex. B at

10 ("Dr. Cannestra is an unretained, treating physician who specializes in physical medicine and rehabilitation who rendered care and treatment to" Plaintiff.) None of Plaintiff's Treaters is an engineer, biomedical engineer, or biomechanical engineer. It does not appear that any of Plaintiff's Treaters performed any accident reconstruction work in this case. Yet, although it appears that each of Plaintiff's Treaters intends to provide a causation opinion, such opinions are based only upon Plaintiff's presentation, treatment, and the temporal proximity of the incident. *See, e.g.*, Ex. B at 12 (Dr. Cannestra's opinions are based "upon his professional training and experience [as a physician], Ms. Roundtree's medical records, various diagnostic tests and procedures performed on her, the examination(s) that he has made of her and her response to all medical treatment to date."). Plaintiff's Treaters' medical records and notes do not shed any further light on any analysis other than reliance on Plaintiff's representations and temporal proximity. *See, e.g.,* Composite Exhibit C at 8 (Dr. D'Agostino states his causation opinion on Plaintiff's initial visit based on only Plaintiff's reported symptoms, review of initial cervical and lumbar spine x-rays, and an initial physical examination, without reference to any pre-loss imaging or records.); Ex. C at 11 and 15 (Dr. Park opines that clinical correlation is needed to confirm that the herniations noted in Plaintiff's December 21, 2022 cervical and lumbar MRIs are medically probably related to the subject motor vehicle collision on October 28, 2022.); and Ex. C at 23 (Without an in-person physical examination of Plaintiff, Dr. Cannestra makes a causation opinion following Plaintiff's initial telemedical visit "[g]iven the fact that patient's symptoms began after the accident that occurred on 10/28/2022."); *cf.* Ex. C at 29 (Dr. Pagan does not make any direct causation opinion, other than to describe that "[t]he patient presented

after this motor vehicle collision with a new onset of complaints" that require additional evaluation.).

Notably, it does not appear that any such opinions are based on any knowledge of the accident sequence and dynamics, much less any specific force application to Plaintiff's body, speed of the vehicles, the principle directions of force or angles of forces applied, or the acceleration of Plaintiff's body during the accident sequence. It also does not appear that any such opinions are based on photographs or other information regarding the accident or the vehicles involved, or any opinions of any biomechanical engineers. In short, Plaintiff's Treaters have not attempted a differential diagnosis to support any opinions on causation of Plaintiff's purported conditions.

## MEMORANDUM OF LAW

### I. FEDERAL RULE OF EVIDENCE 702, THE *DAUBERT* ANALYSIS, AND INSTRUCTIVE CASES

A witness "qualified as an expert by knowledge, skill, experience, training or education" may provide opinion testimony if the expert's knowledge will assist the trier of fact determine a fact in issue, is based on sufficient facts or data, is the product of reliable principles and methods, and if the expert reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702. An expert's opinion is not admissible simply because it is spoken by an expert, "nor can an expert's self-serving assertion that his conclusions were derived by the scientific method be deemed conclusive." *McDowell v. Brown*, 392 F.3d 1283, 1299 (11th Cir. 2004). Furthermore, expert testimony may not include unsupported speculation and subject beliefs. *See Guidroz-Brault v. Missouri Pacific R. Co.*, 254 F.3d 825, 829 (9th Cir. 2001) (citing *Daubert*, 509 U.S. at 591). Instead, an expert's opinion must be grounded in the scientific process and may not

merely be a subjective belief or unsupported conjecture. *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698 (7th Cir. 2009). The Eleventh Circuit has distilled the test for determining the admissibility of expert testimony under Rule 702 and *Daubert* into three basic inquiries – (1) is the expert qualified; (2) is the expert's methodology reliable; and (3) will the testimony assist the trier of fact. *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998).

The trial court serves as a gatekeeper and must not simply take "the expert's word for it." *Hughes v. KIA Motors Corp.*, 766 F.3d 1317, 1331 (11th Cir. 2014). The Court must undertake an independent analysis of each step in the logic leading to the expert's conclusions and "if the analysis is deemed unreliable at any step, the expert's entire opinion must be excluded." *McClain v. Metabalife Int'l, Inc.*, 401 F. 3d 1233, 1245 (11th Cir. 2005). One of the express requirements of Rule 702 is that the expert's opinion must be based on sufficient facts or data. *See United States v. Mamah*, 332 F.3d 475, 477 (7th Cir. 2003). Therefore, "[i]t is critical under Rule 702 that there be a link between the facts or data the expert has worked with and the conclusion the expert's testimony is intended to support. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). The proponent of the expert bears the burden of demonstrating the expert's testimony satisfies the *Daubert* standard. *Lewis*, 561 F.3d 698. The purpose of the gatekeeping requirement is to ensure an expert "employs in the court room the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kuhmo Tire Co., Ltd*, 526 U.S. at 142.

## II. EXPERTS CANNOT RELY ONLY ON TEMPORAL PROXIMITY BUT MUST CONDUCT A DIFFERENTIAL DIAGNOSIS

An expert medical witness's opinion which ultimately relies on a temporal relationship is inadmissible under *Daubert* because a temporal relationship does not

5

equate to a causal relationship. *See Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1343 (11th Cir. 2010); *see also McClain*, 401 F.3d at 1243. "The *post hoc ergo propter hoc* fallacy," meaning "after this, because of this," "assumes causality from temporal sequence." *McClain*, 401 F.3d at 1243 (citing BLACK'S LAW DICTIONARY 1186 (7th ed. 1999)). Such analysis is considered a fallacy "because it makes an assumption based on the false inference that a temporal relationship proves a causal relationship." *Id.*

The United States District Court for the Northern District of Alabama's opinion in *Muniz v. United States* is instructive and persuasive here. 2015 U.S. Dist. LEXIS 100921 (N.D. Ala. Aug. 3, 2015). There, plaintiff was a patient of the Department of Veterans Affairs, and ultimately brought suit against the United States related to her care. *Id.* at *1. She claimed the United States' physician negligently caused the need for an amputation of her right leg. *Id.* at *6. Her subsequent treating physician purported to offer the expert opinion the United States' physician caused the need for amputation. *Id.* at *12. The subsequent physician testified:

> Q: And would the fact she only began to become symptomatic after the 2009 procedure indicate to you, at least, that damage was done during the procedure which ultimately led to the amputation?
> A: (After objection by the Government's attorney). The answer to that would be, yes. I do think that there was some more injury to the artery in 2009. *And I base that on the fact that she had no symptoms prior to that, but she did develop symptoms after that arteriogram*.

*Id.* at *14 (emphasis original).

The court first explained "treating physicians may testify as a lay witness about his first-hand observations and the decision he made during the course of treatment without being subject to *Daubert* analysis. However, [o]nce the treating physician expresses an opinion unrelated to treatment which is based on scientific, technical, or other specialized

6

knowledge, that witness is offering expert testimony for which the court must perform its essential gatekeeping function as required by *Daubert*." *Id.* at *13. (citing *United States v. Henderson*, 409 F.3d 1293, 1300 (11th Cir. 2005)) (quoting *Wilson v. Taser Intern.*, Inc., 303 F. App'x 708, 712 (11th Cir. 2008)) (internal citations and quotations omitted).

The court noted the testifying doctor's opinion the procedure performed by the United States' physician caused the plaintiff's amputation "was not needed to explain his decision making process, nor did it pertain to [the plaintiff's treatment]. As such, his opinion is subject to *Daubert* analysis. The court went on to explain, "[t]hus [the physician's] method for determining causation relies upon the temporal relationship between [the procedure] and [the plaintiff] becoming symptomatic." *Id.* The court continued, "[t]his manner of reasoning is known as the *post hoc ergo propter hoc* fallacy, which means 'after this, because of this.' 'It is called a fallacy because it makes an assumption based on the false inference that a temporal relationship proves a causal relationship.'" *Id.* at *14-15 (internal citations omitted). The court next explained "[t]he Eleventh Circuit has recognized that an expert may not testify as to the cause of an injury if his methodology is based on temporal proximity." *Id.* at *15 (citations omitted). Ultimately, the court concluded "because [the physician's] testimony is based on a temporal relationship, his testimony [the United States' physician] caused [the plaintiff's] subsequent amputation is due to be excluded." *Id.* at *15.

The United States Court of Appeals for the Eleventh Circuit's decision in *Cooper v. Marten Transp., LTD.*, is also instructive here. 539 Fed. Appx. 963 (11th Cir. 2013). There, the plaintiffs' car was rear-ended by a tractor trailer in 2010. *Id.* at 964. They claimed back injuries and sought to admit the testimony of two treating physicians to

7

testify the collision caused the Plaintiffs' injuries and need for treatment. *Id.* at 966. The doctors reviewed medical histories, conducted examinations, performed and reviewed diagnostic tests, looked at photographs, and spoke with the Plaintiffs. *Id.*

The record showed the Plaintiffs both had a history of back pain, degenerative back conditions, and obesity, and both had been involved in a previous car accident in 2009. *Id.* at 966. In light of these facts, the trial court ruled the doctors' methodology was inadequate to form the basis of a reliable opinion that the 2010 collision caused the claimed back problems. *Id.* The trial court further noted neither physician adequately explained why they believed the 2010 collision caused the injuries, rather than the 2009 collision or the preexisting conditions. *Id.* For these reasons, the trial court excluded the doctors' opinions on causation. *Id.*

On appeal, the plaintiffs argued that in addition to reviewing medical histories and conducting examinations, the doctors also conducted nerve studies and reviewed x-rays, discograms, and other diagnostic tests, arguing the doctors' method, as a whole, comprised a valid and reliable scientific method. *Id.* The Eleventh Circuit upheld the exclusion of the physicians' testimony, finding the doctors failed to use differential diagnosis, and never compiled a comprehensive list of possible causes that they subsequently "systematically and scientifically rul[ed] out . . . until a final, suspected cause remain[ed]." *Id.* at 967.

The court noted that, despite the other things they did (review of medical histories, review of test results, etc.) the doctors ultimately rooted their opinions in the premise that, because the Plaintiffs did not manifest their specific symptoms until after the 2010 collision, the 2010 collision was the cause of those injuries. *Id.* The appellate court stated

8

such reasoning "is a classic 'post hoc ergo propter hoc' fallacy which 'assumes causation from temporal sequence'" and was therefore unreliable under *Daubert*. *Id.*

Similarly here, Plaintiff's Treaters' opinions about causation were not needed to form their decision making process about diagnoses or treatments considered or performed. Thus, *Daubert* analysis applies to preclude their causation opinions. *Cooper* confirms and reiterates that an expert may not testify as to the cause of an injury if his methodology is premised, even in part, on temporal proximity unless there has been a differential diagnosis performed. *See Hendrix ex rel. G.P*, 609 F.3d 1183, 1197 (11th Cir. 2010) ("[A] mere temporal relationship between an event and a patient's disease or symptoms does not allow an expert to place that even on a list of possible causes of the disease or symptoms."); *Kilpatrick*, 613 F.3d at 1343; *see also Castro v. KFC Corp.*, No. 6:19-cv-1898-WWB-LRH, 2021 U.S. Dist. LEXIS 181532 (M.D. Fla. Aug. 30, 2021).

Put simply, medical causation testimony rendered by a physician without assessment of the patient's pertinent medical history is unreliable. *Id.* An expert may not simply be a vehicle for the plaintiff's testimony "dressed up and sanctified as the opinion as an expert." *Viterbo v. Dow Chem. Co.*, 826 F. 2d 420, 424 (5th Cir. 1987) (rejecting expert's testimony where expert admitted symptoms could have multiple causes, and concluded the cause was the one most favorable to the plaintiff's case without support other than plaintiff's oral history).

### III. PLAINTIFF'S TREATERS CAN ONLY SPECULATE ABOUT THE ACCIDENT

Based on Plaintiff's disclosures, it is unclear what, if any, basic information Plaintiff's Treaters know about this accident—that is, an accident that occurred between

9

two vehicles on a highway. The balance of their summarized causation opinion lacks factual support.

While it is possible that Plaintiff's Treaters determined, as part of their respective treatments, that Plaintiff's conditions were not inconsistent with the subject accident, this is not the same thing as determining that the accident *caused* an injury, in the legal sense. And, because these treaters were the only experts purported to opine as to the cause of Plaintiff's injury, as identified in Plaintiff's disclosure, although a physician "may testify to their opinions, based upon their personal observations, made while treating Plaintiff . . . [a]ny additional opinions Plaintiff might seek to elicit from these health care professionals [such as causation] are inadmissible because Plaintiff has failed to provide the full written disclosures required by Rule 26(a)(2)(B)." *Blakely v. SAFECO Ins. Co. of Ill.*, No. 6:13-cv-796-Orl-37TBS, 2014 U.S. Dist. LEXIS 36720, at *8 (M.D. Fla. Mar. 20, 2014); *see* Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial . . ."); *see also Goodman v. Staples The Office Superstore, LLC*, 644 F.3d 817, 826 (9th Cir. 2011) (requiring a written report from treating physicians who give expert testimony beyond the scope of the treatment rendered and who review information provided by attorneys in rendering their opinions); *Southard v. State Farm Fire and Cas. Co.*, No. 4:11-cv-243, 2013 U.S. Dist. LEXIS 7283, 2013 WL 209224, at *3 n.1 (S.D. Ga. Jan. 17, 2013).

In *Jones v. Royal Caribbean Cruises, Ltd.*, No. 12-20322-CIV, 2013 U.S. Dist. LEXIS 188097 (S.D. Fla. Apr. 4, 2013), the Court explains the issue in detail, stating:

> There is no doubt that an essential element of Plaintiff's negligence claim is his burden of introducing expert testimony to establish medical causation.

> *Marking v. Pharms.* 2002 U.S. Dist. LEXIS 29108, 2002 WL 32255405, at *3 (S.D. Fla. Feb. 12, 2002); *Drury v. Cardiac Pacemakers, Inc.,* 2003 U.S. Dist. LEXIS 24887, 2003 WL 23319650, No. 8:02CV933T-17MAP, at *3 (M.D. Fla. June 3, 2003) ("In a negligence case, in order to establish causation, expert testimony is necessary."); *see Schmaltz v. Norfolk & Western Ry. Co.,* 896 F. Supp. 180, 182 (N.D. Ill. 1995) (noting that "[e]xpert testimony is generally required to establish a causal connection between the accident and injury 'unless the connection is a kind that would be obvious to laymen, such as a broken leg from being struck by an automobile'") (citing 4 F. Harper, F. James, O. Gray, The Law of Torts § 20.2 (2d ed. 1986)); *Scott v. United States,* 127 F. Supp. 422, 424 (N.D. Fla. 1955) ("it has been consistently held that whether there was a causal connection between an accident . . . [and a sustained injury] . . . is a question with respect to which only medical experts with training, skill, and experience could . . . express an intelligent opinion"). "[L]ay testimony is legally insufficient to support a finding of causation where the medical condition involved is not readily observable." *Crest Prods. v. Louise,* 593 So. 2d 1075, 1077 (Fla. 1st DCA 1992) (*citing Vero Beach Care Ctr. v. Ricks,* 476 So. 2d 262, 264 (Fla. 1st DCA 1985)). "There is no good faith exception to this requirement." *Handy v. Golden Gem Growers, Inc.,* 454 So. 2d 69, 70 (Fla. 1st DCA 1984).
>
> Akin to the claimant in *Louise,* Plaintiff's pain in his back cannot possibly be deemed the result of a "readily observable" medical condition. 593 So. 2d at 1077; *Ricks,* 476 So. 2d at 264 n.1 ("Soft-tissue injuries, such as lower back difficulties, are not readily observable, and hence are not susceptible to evaluation by lay persons."). Therefore, as was required in *Louise,* Plaintiff, too, is required to establish by expert testimony a causal connection between the cruise ship incident and the back injury complained of. *Crest Prods.*, 593 So. 2d at 1077.

*Jones* at *15-18.

While Defendants do not assert that treating medical providers can never provide opinions on causation of injuries, such opinions should not be allowed here in light of the insufficient Rule 26(a)(2)(C) disclosure. Here, Plaintiff has not explained, in her disclosure or elsewhere, the circumstances that led her treating physicians to reach their causation opinions. *Colbert v. United States*, No. 3:09-cv-998-J-20JRK, 2013 WL 12159511, at *1 (M.D. Fla. June 4, 2013) (excluding causation opinions from treating physicians for failing

11

to demonstrate how the treating doctor's "causation opinions were necessary for treatment.") (*citing United States v. Henderson*, 409 F.3d at 1300). In fact, Plaintiff has not disclosed the basis of any of the opinions purported to be provided by her treaters. The main purpose of an expert disclosure is to disclose the information which Plaintiff seeks to rely on in order to prevail in her position. However, here, Plaintiff's Rule 26(a)(2)(C) summaries lack the support for the opinions, and in turn, Defendants are left virtually incapable of rebutting their opinions whatsoever.

In short, Plaintiff's Treaters are speculating far beyond the bounds of what is permissible from any witness. Being an expert is not a license to make unsubstantiated opinions based exclusively on hearsay. Plaintiff's Treaters should be precluded from offering any testimony at this trial concerning the accident dynamics or sequence as it does not appear that they have any facts which may help the jury in determining the issues. Instead, their pure speculation is an exercise in patient advocacy which could only serve to inflame and confuse the jury in violation of Rule 403, Federal Rules of Evidence.

### IV. PLAINTIFF'S TREATERS' CAUSATION OPINIONS CAN ONLY BE BASED UPON THE TEMPORAL PROXIMITY BETWEEN THE ALLEGED ONSET OF PAIN AND THE INCIDENT

The bottom line is Plaintiff's Treaters are relying on the temporal proximity of the alleged trauma from this accident and the alleged onset of Plaintiff's pain/problems to opine the accident caused the conditions in her body. In essence, Plaintiff reported her issues started after the accident, and Plaintiff's Treaters reviewed the medical records and then opined the conditions were caused by this accident. Even if a medical differential diagnosis indicated the conditions in Plaintiff's body were traumatically induced, which are not represented in this record, Plaintiff's Treaters still could not appropriately offer an opinion that this accident was the specific trauma which caused the traumatically induced

conditions in Plaintiff's body. Eleventh Circuit case law distinguishes that a differential diagnosis for offering an opinion on *causation* (sufficient to withstand *Daubert* analysis) is not the same as coming to the conclusion the conditions were traumatically induced.

And, it does not even appear that any differential diagnosis as to causation of the trauma was performed. There is no reference to knowledge of the forces and speeds in the accident in this case (beyond speculation), and a lack of sufficient knowledge about Plaintiff's medical history. The only evidence Plaintiff's Treaters had regarding this accident and the possibility that any attendant trauma to Plaintiff's body caused the conditions in Plaintiff's body is Plaintiff's own statements to them. Thus, such a leap presents the classic *post hoc ergo propter hoc* flaw, and Plaintiff's Treaters' testimony should be excluded.

## V.   CONCLUSION

Plaintiff improperly presents Plaintiff's Treaters in a manner to transform their testimony and role from a treating physician into a medical expert on injury causation, subject to *Daubert* analysis, by opining the accident caused the alleged injuries in Plaintiff's body. Plaintiff's Treaters' opinions about causation are not supported by reliable facts or data, and rely instead on the classic *post hoc ergo propter hoc* fallacy and likely rampant speculation. This is not the standard for expert witness testimony under Rule 702. Accordingly, Plaintiff's Treaters' testimony concerning the cause of the abnormal conditions in Plaintiff's body must be precluded.

## **RULE 3.01(G) CERTIFICATION**

Pursuant to Rule 3.01(g), of the Local Rules of the United States District Court for the Middle District of Florida, the undersigned counsel for Defendants certifies that he has

complied with the attorney-conference requirement of Local Rule 3.01(g) via electronic mail, and Plaintiff's counsel opposes the relief sought by this Motion.

    Dated: April 26, 2024.

                                          */s/ C. H. Houston III*
                                          Heath L. Vickers
                                          Florida Bar No. 0084769
                                          C. H. Houston III
                                          Florida Bar No. 100268
                                          CARR ALLISON
                                          200 W Forsyth Street, Suite 600
                                          Jacksonville, Florida 32202
                                          Telephone:  (904) 328-6456
                                          Facsimile:   (904) 328-6473
                                          Email:  hvickers@carrallison.com
                                          Email:  chhouston@carrallison.com
                                          Secondary Email:
                                          nwelsh@carrallison.com
                                          *Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that on April 26, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will provide a notice of electronic filing and a copy of the foregoing to the following:

Paul Shorstein
PAJCIC & PAJCIC, P.A.
One Independent Drive, Suite 1900
Jacksonville, FL 32202
Primary Email:  paul@pajcic.com
Secondary Email:  molly@pajcic.com
*Attorneys for Plaintiff*

                                          */s/ C. H. Houston III*
                                          C. H. Houston III
                                          Florida Bar No. 100268
                                          *Attorney for Defendants*